**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 21, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

IN RE: MOTOR FUEL TEMPERATURE
SALES PRACTICES LITIGATION

-------------------------------

ZACHARY WILSON; MATHEW COOK;
BRENT DONALDSON; SAMANTHA
BAYLARD; CRAIG MASSEY;
RICHARD GALAUSKI; WILLIAM
BOYD; LISA MCBRIDE; TAMARA
MILLER; HEARTLAND LANDSCAPE
GROUP LLC; TEAM TRUCKING;
JAMES ANLIKER; DENNIS K. MANN;
PHYLLIS LERNER; HERB GLASER;
STEVEN RUBIN; MAX CANDIOTTY;
FRED AGUIRRE; JAMES JARVAIS;
MARA REDSTONE; RAPHAEL
SAGALYN; J.C. WASH; JEAN W.
NEESE; CECIL R. WILKINS; WAYNE
BYRAM; GARY KOHUT; DEBRA
BERG; TIA GOMEZ; SHONNA S.
BUTLER; BEN DOZIER; MARK
SCIVNER; BARBARA CUMBO; JAMES
GRAHAM; KENNEDY G. KRAATZ;
MELISSA D. MURRAY; MICHAEL A.
WARNER; CLINTON J. DAVIS;
STEVEN R. RUTHERFORD; LISA ANN
LEE; BRENT CRAWFORD; DIXCEE
MILLSAP; CARL RITTERHOUSE;
SAMUEL ELY; VICTOR RUYBALID;
HADLEY BOWER; KRISTY DEANN
MOTT; CHARLES COCKRELL, JR.;
WILLIAM RUTTHERFORD; JAN
RUTHERFORD; MARK WYATT;
DAWN LALOR; GERALD PANTO, JR.;
EDGER PAZ; CHARLES D. JONES;

No. 15-3221

MICHAEL GAUTHREAUX; JOANN KORLESKI; JEFF JENKINS; SARA TERRY; JACOB STEED; MARVIN BRYAN; JOHN TELLES; CHRISTOPHER PAYNE; SCOTT CAMPBELL; JONATHAN CHARLES CONLIN; PRISCILLA CRAFT; ROBERT HICKS; RICHARD PATRICK; JESSICA HONIGBERG; RAYSHAUN GLANTON; GARLAND WILLIAMS; ANNIE SMITH; BOBBY ROBERSON; SAM HOTCHKISS; ANNA LEGATES; ANDREA FRAYSER; MELVIN ELLISON; CECIL WILKINS; BETTY CHERRY; JOY HOWELL; ALLEN RAY KLEIN,

  Plaintiffs - Appellees,

v.

CIRCLE K STORES, INC.; PILOT TRAVEL CENTERS, LLC; KUM&GO, L.C.; QUICKTRIP CORPORATION; MURPHY OIL USA, INC.; RACE TRAC PETROLEUM, INC.; MARATHON PETROLEUM COMPANY, LLC; THE PANTRY, INC.; SPEEDWAY SUPERAMERICA, LLC; SHEETZ, INC.; WAWA, INC.; FLYING J INC.; 7-ELEVEN, INC.; PTCAA TEXAS, LP;

  Defendants - Appellants,

v.

CHEVRON USA, INC.; CASEY'S GENERAL STORE, INC.; SINCLAIR OIL CORPORATION; EXXON MOBIL CORPORATION; ESSO VIRGIN ISLANDS, INC. MOBIL OIL GUAM, INC.; BP PRODUCTS NORTH AMERICA INC.,

2

Defendants - Appellees,
and

BP CORPORATION NORTH AMERICA,
INC.; CITGO PETROLEUM
CORPORATION; CONOCO PHILLIPS
COMPANY; VALERO MARKETING
AND SUPPLY COMPANY; SUNOCO
CORPORATION; EQUILON
ENTERPRISES, LLC, d/b/a SHELL OIL
PRODUCTS COMPANY, LLC; MOTIVA
ENTERPRISES, LLC; TESORO
REFINING AND MARKETING
COMPANY; SAM'S CLUB; LOVE'S
TRAVEL STOP & COUNTRY STORES,
INC.; G AND M OIL COMPANY, INC.;
UNITED EL SEGUNDO, INC.; WORLD
OIL CORPORATION; M.M. FOLWER,
INC.; DANSK INVESTMENT GROUP,
INC.; B-B OIL COMPANY, INC.; PORT
CITIES OIL LLC; FLASH MARKET,
INC; J&P FLASH, INC.; MAGNESS OIL
COMPANY; COULSON OIL
COMPANY, INC.; DIAMOND STATE
OIL, LLC;  EZ MART STORES, INC.;
THORNTONS, INC.,

Defendants.

_____

IN RE: MOTOR FUEL TEMPERATURE
SALES PRACTICES LITIGATION

-----------------------------

ZACHARY WILSON; MATHEW COOK;          No. 15-3227
BRENT DONALDSON; SAMANTHA
BAYLARD; CRAIG MASSEY;
RICHARD GALAUSKI; WILLIAM
BOYD; LISA MCBRIDE; TAMARA
MILLER; HEARTLAND LANDSCAPE

3

GROUP LLC; TEAM TRUCKING; JAMES ANLIKER; DENNIS K. MANN; PHYLLIS LERNER; HERB GLASER; STEVEN RUBIN; MAX CANDIOTTY; FRED AGUIRRE; JAMES JARVAIS; MARA REDSTONE; RAPHAEL SAGALYN; J.C. WASH; JEAN W. NEESE; CECIL R. WILKINS; WAYNE BYRAM; GARY KOHUT; DEBRA BERG; TIA GOMEZ; SHONNA S. BUTLER; BEN DOZIER; MARK SCIVNER; BARBARA CUMBO; JAMES GRAHAM; KENNEDY G. KRAATZ; MELISSA D. MURRAY; MICHAEL A. WARNER; CLINTON J. DAVIS; STEVEN R. RUTHERFORD; LISA ANN LEE; BRENT CRAWFORD; DIXCEE MILLSAP; CARL RITTERHOUSE; SAMUEL ELY; VICTOR RUYBALID; HADLEY BOWER; KRISTY DEANN MOTT; CHARLES COCKRELL, JR.; WILLIAM RUTTHERFORD; JAN RUTHERFORD; MARK WYATT; DAWN LALOR; GERALD PANTO, JR.; EDGER PAZ; CHARLES D. JONES; MICHAEL GAUTHREAUX; JOANN KORLESKI; JEFF JENKINS; SARA TERRY; JACOB STEED; MARVIN BRYAN; JOHN TELLES; CHRISTOPHER PAYNE; SCOTT CAMPBELL; JONATHAN CHARLES CONLIN; PRISCILLA CRAFT; ROBERT HICKS; RICHARD PATRICK; JESSICA HONIGBERG; RAYSHAUN GLANTON; GARLAND WILLIAMS; ANNIE SMITH; BOBBY ROBERSON; SAM HOTCHKISS; ANNA LEGATES; ANDREA FRAYSER; MELVIN ELLISON; CECIL WILKINS; BETTY CHERRY; JOY HOWELL; ALLEN RAY KLEIN,

     Plaintiffs - Appellees,

4

v.

CIRCLE K STORES, INC; PILOT TRAVEL CENTERS, LLC; KUM&GO, L.C.; QUICKTRIP CORPORATION; MURPHY OIL USA, INC.; RACE TRAC PETROLEUM, INC.; MARATHON PETROLEUM COMPANY, LLC; THE PANTRY, INC.; SPEEDWAY SUPERAMERICA, LLC; SHEETZ, INC.; WAWA, INC.; FLYING J INC.; 7-ELEVEN, INC.; PTCAA TEXAS, LP,

Defendants - Appellants,

CHEVRON USA, INC.; CASEY'S GENERAL STORE, INC.; SINCLAIR OIL CORPORATION; EXXON MOBIL CORPORATION; ESSO VIRGIN ISLANDS, INC.; MOBIL OIL GUAM, INC.; BP PRODUCTS NORTH AMERICA INC.,

Defendants - Appellees,

and

BP CORPORATION NORTH AMERICA, INC.; CITGO PETROLEUM CORPORATION; CONOCO PHILLIPS COMPANY; VALERO MARKETING AND SUPPLY COMPANY; SUNOCO CORPORATION; EQUILON ENTERPRISES, LLC, d/b/a SHELL OIL PRODUCTS COMPANY, LLC; MOTIVA ENTERPRISES, LLC; TESORO REFINING AND MARKETING COMPANY; SAM'S CLUB; LOVE'S TRAVEL STOP & COUNTRY STORES, INC.; G AND M OIL COMPANY, INC.; UNITED EL SEGUNDO, INC.; WORLD OIL CORPORATION; M.M. FOLWER,

5

INC.; DANSK INVESTMENT GROUP, INC.; B-B OIL COMPANY, INC.; PORT CITIES OIL LLC; FLASH MARKET, INC; J&P FLASH, INC.; MAGNESS OIL COMPANY; COULSON OIL COMPANY, INC.; DIAMOND STATE OIL, LLC;  EZ MART STORES, INC.; THORNTONS, INC.,

  Defendants.

_____

IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION

------------------------------

ZACHARY WILSON; MATHEW COOK; BRENT DONALDSON; SAMANTHA BAYLARD; CRAIG MASSEY; RICHARD GALAUSKI; WILLIAM BOYD; LISA MCBRIDE; TAMARA MILLER; HEARTLAND LANDSCAPE GROUP LLC; TEAM TRUCKING; JAMES ANLIKER; DENNIS K. MANN; PHYLLIS LERNER; HERB GLASER; STEVEN RUBIN; MAX CANDIOTTY; FRED AGUIRRE; JAMES JARVAIS; MARA REDSTONE; RAPHAEL SAGALYN; J.C. WASH; JEAN W. NEESE; CECIL R. WILKINS; WAYNE BYRAM; GARY KOHUT; DEBRA BERG; TIA GOMEZ; SHONNA S. BUTLER; BEN DOZIER; MARK SCIVNER; BARBARA CUMBO; JAMES GRAHAM; KENNEDY G. KRAATZ; MELISSA D. MURRAY; MICHAEL A. WARNER; CLINTON J. DAVIS; STEVEN R. RUTHERFORD; LISA ANN LEE; BRENT CRAWFORD; DIXCEE MILLSAP; CARL RITTERHOUSE; SAMUEL ELY; VICTOR RUYBALID;

No. 15-3228

6

HADLEY BOWER; KRISTY DEANN MOTT; CHARLES COCKRELL, JR.; WILLIAM RUTTHERFORD; JAN RUTHERFORD; MARK WYATT; DAWN LALOR; GERALD PANTO, JR.; EDGER PAZ; CHARLES D. JONES; MICHAEL GAUTHREAUX; JOANN KORLESKI; JEFF JENKINS; SARA TERRY; JACOB STEED; MARVIN BRYAN; JOHN TELLES; CHRISTOPHER PAYNE; SCOTT CAMPBELL; JONATHAN CHARLES CONLIN; PRISCILLA CRAFT; ROBERT HICKS; RICHARD PATRICK; JESSICA HONIGBERG; RAYSHAUN GLANTON; GARLAND WILLIAMS; ANNIE SMITH; BOBBY ROBERSON; SAM HOTCHKISS; ANNA LEGATES; ANDREA FRAYSER; MELVIN ELLISON; CECIL WILKINS; BETTY CHERRY; JOY HOWELL; ALLEN RAY KLEIN,

Plaintiffs - Appellees,

v.

BP CORPORATION NORTH AMERICA, INC.; CITGO PETROLEUM CORPORATION; CONOCO PHILLIPS COMPANY; COSTCO WHOLESALE CORPORATION; EXXON MOBIL CORPORATION; SINCLAIR OIL CORPORATION; VALERO MARKETING AND SUPPLY COMPANY; SUNOCO CORPORATION; EQUILON ENTERPRISES, LLC., d/b/a SHELL OIL PRODUCTS COMPANY, LLC; MOTIVA ENTERPRISES, LLC; TESORO REFINING AND MARKETING COMPANY; SAM'S CLUB; LOVE'S TRAVEL STOP & COUNTRY STORES, INC.; G AND M OIL COMPANY, INC.;

7

UNITED EL SEGUNDO, INC.; WORLD OIL CORPORATION; M.M. FOLWER, INC.;  J&P FLASH, INC.; DANSK INVESTMENT GROUP, INC.; CIRCLE K STORES, INC; KUM&GO, L.C.; MURPHY OIL USA, INC.; MARATHON PETROLEUM COMPANY, LLC; FLYING J INC.; 7-ELEVEN, INC.; PTCAA TEXAS, LP; PILOT TRAVEL CENTERS, LLC; QUICKTRIP CORPORATION; RACE TRAC PETROLEUM, INC.; THE PANTRY, INC.; SPEEDWAY SUPERAMERICA, LLC; SHEETZ, INC.; WAWA, INC.; B-B OIL COMPANY, INC.; COULSON OIL COMPANY, INC.; PORT CITIES OIL LLC; FLASH MARKET, INC.; J&P FLASH, INC.; DIAMOND STATE OIL, LLC; MAGNESS OIL COMPANY; THORNTON'S, INC.,

       Defendants,

and

CHEVRON USA, INC.; EZ MART STORES, INC.; CASEY'S GENERAL STORE, INC.,

       Defendants- Appellees,

v.

MELISSA HOLYOAK; ADAM SCHULMAN; AMY ALKON; NICOLAS S. MARTIN; THEODORE H. FRANK,

       Objectors - Appellants.

_____

IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION

8

------------------------------

ANNIE SMITH; CHRISTOPHER PAYNE; PHYLLIS LERNER; HERB GLAZER; MARA REDSTONE; BRENT CRAWFORD; VICTOR RUYBALD; ZACH WILSON; LISA MCBRIDE; RAPHAEL SAGALYN; BRENT DONALDSON; GARY KOHUT; RICHARD GAULAUSKI; CHARLES BYRAM; JEAN NEESE; SHONNA BUTLER; GERALD PANTO, JR.; JOANN KORLESKI; TAMARA MILLER; PRISCILLA CRAFT; JEFF JENKINS; JAMES GRAHAM, Class Representatives,

     Plaintiffs - Appellees,

v.

COSTCO WHOLESALE CORPORATION,

     Defendant - Appellant,

and

BP PRODUCTS NORTH AMERICA INC.; BP WEST COAST PRODUCTS, LLC; CASEY'S GENERAL STORES, INC.; CITGO PETROLEUM CORPORATION; CONOCOPHILLIPS COMPANY; EQUILON ENTERPRISES LLC, d/b/a Shell Oil Products US; MOTIVA ENTERPRISES LLC; EXXON MOBIL CORPORATION; MOBIL OIL GUAM, INC.; ESSO VIRGIN ISLANDS, INC.; SAM'S EAST, INC.; SAM'S WEST, INC.; WAL-MART STORES, INC.; WAL-MART STORES EAST, LP; SINCLAIR OIL CORPORATION;

No. 15-3254

VALERO MARKETING AND SUPPLY COMPANY; CHEVRON U.S.A., INC.; SUNOCO, INC. (R&M); B-B OIL COMPANY, INC.; COULSON OIL COMPANY, INC.; DIAMOND STATE OIL, LLC; FLASH MARKET, INC.; J&P FLASH, INC.; MAGNESS OIL COMPANY; PORT CITIES OIL, LLC; E-Z MART STORES, INC.; LOVE'S TRAVEL STOP & COUNTRY STORES, INC.; WR HESS COMPANY; M.M. FOWLER, INC., d/b/a Family Fare; DANSK INVESTMENT GROUP, INC., f/k/a USA Petroleum Corporation; TESORO REFINING AND MARKETING COMPANY; THORNTONS, INC.; G&M OIL COMPANY, INC.; G&M OIL CO., LLC; UNITED EL SEGUNDO, INC.; WORLD OIL CORPORATION,

Defendants,

v.

SPEEDWAY LLC; 7-ELEVEN, INC.; CIRCLE K STORES, INC; KUM & GO, L.C.; MARATHON PETROLEUM COMPANY LP; MURPHY OIL USA, INC.; PILOT TRAVEL CENTERS, LLC; FLYING J INC.; PTCAA TEXAS, LP; RACETRAC PETROLEUM, INC.; QUIKTRIP CORPORATION; SHEETZ, INC.; THE PANTRY, INC.; WAWA, INC.,

Objectors.

_____

**ORDER**
_____

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

10

These matters are before the court on the *Petition for Panel Rehearing and Rehearing En Banc* filed by appellants Alkon, Frank, Holyoak, Martin, and Schulman in number 15-3228. Upon consideration, the panel grants in part, and only to the extent of the modifications contained in the attached revised Opinion, that part of the request seeking panel rehearing. The Opinion filed on August 23, 2017, is hereby withdrawn, and shall be replaced by the attached revised Opinion effective the date of this order. The Clerk is directed to file the attached revised Opinion forthwith.

That part of this *Petition* seeking rehearing en banc, as well as the *Petition for Rehearing En Banc* filed by the Speedway Objectors in numbers 15-3221 and 15-3327, remain pending.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

September 21, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

IN RE: MOTOR FUEL TEMPERATURE
SALES PRACTICES LITIGATION

-------------------------------

ZACHARY WILSON; MATHEW COOK;
BRENT DONALDSON; SAMANTHA
BAYLARD; CRAIG MASSEY;
RICHARD GALAUSKI; WILLIAM
BOYD; LISA MCBRIDE; TAMARA
MILLER; HEARTLAND LANDSCAPE
GROUP LLC; TEAM TRUCKING;
JAMES ANLIKER; DENNIS K. MANN;
PHYLLIS LERNER; HERB GLASER;
STEVEN RUBIN; MAX CANDIOTTY;
FRED AGUIRRE; JAMES JARVAIS;
MARA REDSTONE; RAPHAEL
SAGALYN; J.C. WASH; JEAN W.
NEESE; CECIL R. WILKINS; WAYNE
BYRAM; GARY KOHUT; DEBRA
BERG; TIA GOMEZ; SHONNA S.
BUTLER; BEN DOZIER; MARK
SCIVNER; BARBARA CUMBO; JAMES
GRAHAM; KENNEDY G. KRAATZ;
MELISSA D. MURRAY; MICHAEL A.
WARNER; CLINTON J. DAVIS;
STEVEN R. RUTHERFORD; LISA ANN
LEE; BRENT CRAWFORD; DIXCEE
MILLSAP; CARL RITTERHOUSE;
SAMUEL ELY; VICTOR RUYBALID;
HADLEY BOWER; KRISTY DEANN
MOTT; CHARLES COCKRELL, JR.;
WILLIAM RUTTHERFORD; JAN
RUTHERFORD; MARK WYATT;
DAWN LALOR; GERALD PANTO, JR.;
EDGER PAZ; CHARLES D. JONES;

No. 15-3221

MICHAEL GAUTHREAUX; JOANN KORLESKI; JEFF JENKINS; SARA TERRY; JACOB STEED; MARVIN BRYAN; JOHN TELLES; CHRISTOPHER PAYNE; SCOTT CAMPBELL; JONATHAN CHARLES CONLIN; PRISCILLA CRAFT; ROBERT HICKS; RICHARD PATRICK; JESSICA HONIGBERG; RAYSHAUN GLANTON; GARLAND WILLIAMS; ANNIE SMITH; BOBBY ROBERSON; SAM HOTCHKISS; ANNA LEGATES; ANDREA FRAYSER; MELVIN ELLISON; CECIL WILKINS; BETTY CHERRY; JOY HOWELL; ALLEN RAY KLEIN,

       Plaintiffs - Appellees,

v.

CIRCLE K STORES, INC.; PILOT TRAVEL CENTERS, LLC; KUM&GO, L.C.; QUICKTRIP CORPORATION; MURPHY OIL USA, INC.; RACE TRAC PETROLEUM, INC.; MARATHON PETROLEUM COMPANY, LLC; THE PANTRY, INC.; SPEEDWAY SUPERAMERICA, LLC; SHEETZ, INC.; WAWA, INC.; FLYING J INC.; 7-ELEVEN, INC.; PTCAA TEXAS, LP;

       Defendants - Appellants,

v.

CHEVRON USA, INC.; CASEY'S GENERAL STORE, INC.; SINCLAIR OIL CORPORATION; EXXON MOBIL CORPORATION; ESSO VIRGIN ISLANDS, INC. MOBIL OIL GUAM, INC.; BP PRODUCTS NORTH AMERICA INC.,

2

Defendants - Appellees,
and

BP CORPORATION NORTH AMERICA, INC.; CITGO PETROLEUM CORPORATION; CONOCO PHILLIPS COMPANY; VALERO MARKETING AND SUPPLY COMPANY; SUNOCO CORPORATION; EQUILON ENTERPRISES, LLC, d/b/a SHELL OIL PRODUCTS COMPANY, LLC; MOTIVA ENTERPRISES, LLC; TESORO REFINING AND MARKETING COMPANY; SAM'S CLUB; LOVE'S TRAVEL STOP & COUNTRY STORES, INC.; G AND M OIL COMPANY, INC.; UNITED EL SEGUNDO, INC.; WORLD OIL CORPORATION; M.M. FOLWER, INC.; DANSK INVESTMENT GROUP, INC.; B-B OIL COMPANY, INC.; PORT CITIES OIL LLC; FLASH MARKET, INC; J&P FLASH, INC.; MAGNESS OIL COMPANY; COULSON OIL COMPANY, INC.; DIAMOND STATE OIL, LLC;  EZ MART STORES, INC.; THORNTONS, INC.,

Defendants.

_____

IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION

------------------------------

ZACHARY WILSON; MATHEW COOK; BRENT DONALDSON; SAMANTHA BAYLARD; CRAIG MASSEY; RICHARD GALAUSKI; WILLIAM BOYD; LISA MCBRIDE; TAMARA MILLER; HEARTLAND LANDSCAPE

No. 15-3227

GROUP LLC; TEAM TRUCKING; JAMES ANLIKER; DENNIS K. MANN; PHYLLIS LERNER; HERB GLASER; STEVEN RUBIN; MAX CANDIOTTY; FRED AGUIRRE; JAMES JARVAIS; MARA REDSTONE; RAPHAEL SAGALYN; J.C. WASH; JEAN W. NEESE; CECIL R. WILKINS; WAYNE BYRAM; GARY KOHUT; DEBRA BERG; TIA GOMEZ; SHONNA S. BUTLER; BEN DOZIER; MARK SCIVNER; BARBARA CUMBO; JAMES GRAHAM; KENNEDY G. KRAATZ; MELISSA D. MURRAY; MICHAEL A. WARNER; CLINTON J. DAVIS; STEVEN R. RUTHERFORD; LISA ANN LEE; BRENT CRAWFORD; DIXCEE MILLSAP; CARL RITTERHOUSE; SAMUEL ELY; VICTOR RUYBALID; HADLEY BOWER; KRISTY DEANN MOTT; CHARLES COCKRELL, JR.; WILLIAM RUTTHERFORD; JAN RUTHERFORD; MARK WYATT; DAWN LALOR; GERALD PANTO, JR.; EDGER PAZ; CHARLES D. JONES; MICHAEL GAUTHREAUX; JOANN KORLESKI; JEFF JENKINS; SARA TERRY; JACOB STEED; MARVIN BRYAN; JOHN TELLES; CHRISTOPHER PAYNE; SCOTT CAMPBELL; JONATHAN CHARLES CONLIN; PRISCILLA CRAFT; ROBERT HICKS; RICHARD PATRICK; JESSICA HONIGBERG; RAYSHAUN GLANTON; GARLAND WILLIAMS; ANNIE SMITH; BOBBY ROBERSON; SAM HOTCHKISS; ANNA LEGATES; ANDREA FRAYSER; MELVIN ELLISON; CECIL WILKINS; BETTY CHERRY; JOY HOWELL; ALLEN RAY KLEIN,

Plaintiffs - Appellees,

4

v.

CIRCLE K STORES, INC; PILOT TRAVEL CENTERS, LLC; KUM&GO, L.C.; QUICKTRIP CORPORATION; MURPHY OIL USA, INC.; RACE TRAC PETROLEUM, INC.; MARATHON PETROLEUM COMPANY, LLC; THE PANTRY, INC.; SPEEDWAY SUPERAMERICA, LLC; SHEETZ, INC.; WAWA, INC.; FLYING J INC.; 7-ELEVEN, INC.; PTCAA TEXAS, LP,

     Defendants - Appellants,

CHEVRON USA, INC.; CASEY'S GENERAL STORE, INC.; SINCLAIR OIL CORPORATION; EXXON MOBIL CORPORATION; ESSO VIRGIN ISLANDS, INC.; MOBIL OIL GUAM, INC.; BP PRODUCTS NORTH AMERICA INC.,

     Defendants - Appellees,

and

BP CORPORATION NORTH AMERICA, INC.; CITGO PETROLEUM CORPORATION; CONOCO PHILLIPS COMPANY; VALERO MARKETING AND SUPPLY COMPANY; SUNOCO CORPORATION; EQUILON ENTERPRISES, LLC, d/b/a SHELL OIL PRODUCTS COMPANY, LLC; MOTIVA ENTERPRISES, LLC; TESORO REFINING AND MARKETING COMPANY; SAM'S CLUB; LOVE'S TRAVEL STOP & COUNTRY STORES, INC.; G AND M OIL COMPANY, INC.; UNITED EL SEGUNDO, INC.; WORLD OIL CORPORATION; M.M. FOLWER,

5

INC.; DANSK INVESTMENT GROUP, INC.; B-B OIL COMPANY, INC.; PORT CITIES OIL LLC; FLASH MARKET, INC; J&P FLASH, INC.; MAGNESS OIL COMPANY; COULSON OIL COMPANY, INC.; DIAMOND STATE OIL, LLC; EZ MART STORES, INC.; THORNTONS, INC.,

      Defendants.

_____

IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION

------------------------------

ZACHARY WILSON; MATHEW COOK; BRENT DONALDSON; SAMANTHA BAYLARD; CRAIG MASSEY; RICHARD GALAUSKI; WILLIAM BOYD; LISA MCBRIDE; TAMARA MILLER; HEARTLAND LANDSCAPE GROUP LLC; TEAM TRUCKING; JAMES ANLIKER; DENNIS K. MANN; PHYLLIS LERNER; HERB GLASER; STEVEN RUBIN; MAX CANDIOTTY; FRED AGUIRRE; JAMES JARVAIS; MARA REDSTONE; RAPHAEL SAGALYN; J.C. WASH; JEAN W. NEESE; CECIL R. WILKINS; WAYNE BYRAM; GARY KOHUT; DEBRA BERG; TIA GOMEZ; SHONNA S. BUTLER; BEN DOZIER; MARK SCIVNER; BARBARA CUMBO; JAMES GRAHAM; KENNEDY G. KRAATZ; MELISSA D. MURRAY; MICHAEL A. WARNER; CLINTON J. DAVIS; STEVEN R. RUTHERFORD; LISA ANN LEE; BRENT CRAWFORD; DIXCEE MILLSAP; CARL RITTERHOUSE; SAMUEL ELY; VICTOR RUYBALID;

No. 15-3228

6

HADLEY BOWER; KRISTY DEANN MOTT; CHARLES COCKRELL, JR.; WILLIAM RUTTHERFORD; JAN RUTHERFORD; MARK WYATT; DAWN LALOR; GERALD PANTO, JR.; EDGER PAZ; CHARLES D. JONES; MICHAEL GAUTHREAUX; JOANN KORLESKI; JEFF JENKINS; SARA TERRY; JACOB STEED; MARVIN BRYAN; JOHN TELLES; CHRISTOPHER PAYNE; SCOTT CAMPBELL; JONATHAN CHARLES CONLIN; PRISCILLA CRAFT; ROBERT HICKS; RICHARD PATRICK; JESSICA HONIGBERG; RAYSHAUN GLANTON; GARLAND WILLIAMS; ANNIE SMITH; BOBBY ROBERSON; SAM HOTCHKISS; ANNA LEGATES; ANDREA FRAYSER; MELVIN ELLISON; CECIL WILKINS; BETTY CHERRY; JOY HOWELL; ALLEN RAY KLEIN,

       Plaintiffs - Appellees,

v.

BP CORPORATION NORTH AMERICA, INC.; CITGO PETROLEUM CORPORATION; CONOCO PHILLIPS COMPANY; COSTCO WHOLESALE CORPORATION; EXXON MOBIL CORPORATION; SINCLAIR OIL CORPORATION; VALERO MARKETING AND SUPPLY COMPANY; SUNOCO CORPORATION; EQUILON ENTERPRISES, LLC., d/b/a SHELL OIL PRODUCTS COMPANY, LLC; MOTIVA ENTERPRISES, LLC; TESORO REFINING AND MARKETING COMPANY; SAM'S CLUB; LOVE'S TRAVEL STOP & COUNTRY STORES, INC.; G AND M OIL COMPANY, INC.;

7

UNITED EL SEGUNDO, INC.; WORLD OIL CORPORATION; M.M. FOLWER, INC.;  J&P FLASH, INC.; DANSK INVESTMENT GROUP, INC.; CIRCLE K STORES, INC; KUM&GO, L.C.; MURPHY OIL USA, INC.; MARATHON PETROLEUM COMPANY, LLC; FLYING J INC.; 7-ELEVEN, INC.; PTCAA TEXAS, LP; PILOT TRAVEL CENTERS, LLC; QUICKTRIP CORPORATION; RACE TRAC PETROLEUM, INC.; THE PANTRY, INC.; SPEEDWAY SUPERAMERICA, LLC; SHEETZ, INC.; WAWA, INC.; B-B OIL COMPANY, INC.; COULSON OIL COMPANY, INC.; PORT CITIES OIL LLC; FLASH MARKET, INC.; J&P FLASH, INC.; DIAMOND STATE OIL, LLC; MAGNESS OIL COMPANY; THORNTON'S, INC.,

Defendants,

and

CHEVRON USA, INC.; EZ MART STORES, INC.; CASEY'S GENERAL STORE, INC.,

Defendants- Appellees,

v.

MELISSA HOLYOAK; ADAM SCHULMAN; AMY ALKON; NICOLAS S. MARTIN; THEODORE H. FRANK,

Objectors - Appellants.

_____

IN RE: MOTOR FUEL TEMPERATURE SALES PRACTICES LITIGATION

8

-----------------------------

ANNIE SMITH; CHRISTOPHER PAYNE; PHYLLIS LERNER; HERB GLAZER; MARA REDSTONE; BRENT CRAWFORD; VICTOR RUYBALD; ZACH WILSON; LISA MCBRIDE; RAPHAEL SAGALYN; BRENT DONALDSON; GARY KOHUT; RICHARD GAULAUSKI; CHARLES BYRAM; JEAN NEESE; SHONNA BUTLER; GERALD PANTO, JR.; JOANN KORLESKI; TAMARA MILLER; PRISCILLA CRAFT; JEFF JENKINS; JAMES GRAHAM, Class Representatives,

      Plaintiffs - Appellees,

v.

COSTCO WHOLESALE CORPORATION,

      Defendant - Appellant,

and

BP PRODUCTS NORTH AMERICA INC.; BP WEST COAST PRODUCTS, LLC; CASEY'S GENERAL STORES, INC.; CITGO PETROLEUM CORPORATION; CONOCOPHILLIPS COMPANY; EQUILON ENTERPRISES LLC, d/b/a Shell Oil Products US; MOTIVA ENTERPRISES LLC; EXXON MOBIL CORPORATION; MOBIL OIL GUAM, INC.; ESSO VIRGIN ISLANDS, INC.; SAM'S EAST, INC.; SAM'S WEST, INC.; WAL-MART STORES, INC.; WAL-MART STORES EAST, LP; SINCLAIR OIL CORPORATION;

No. 15-3254

9

VALERO MARKETING AND SUPPLY
COMPANY; CHEVRON U.S.A., INC.;
SUNOCO, INC. (R&M); B-B OIL
COMPANY, INC.; COULSON OIL
COMPANY, INC.; DIAMOND STATE
OIL, LLC; FLASH MARKET, INC.; J&P
FLASH, INC.; MAGNESS OIL
COMPANY; PORT CITIES OIL, LLC; E-
Z MART STORES, INC.; LOVE'S
TRAVEL STOP & COUNTRY STORES,
INC.; WR HESS COMPANY; M.M.
FOWLER, INC., d/b/a Family Fare;
DANSK INVESTMENT GROUP, INC.,
f/k/a USA Petroleum Corporation;
TESORO REFINING AND MARKETING
COMPANY; THORNTONS, INC.; G&M
OIL COMPANY, INC.; G&M OIL CO.,
LLC; UNITED EL SEGUNDO, INC.;
WORLD OIL CORPORATION,

Defendants,

v.

SPEEDWAY LLC; 7-ELEVEN, INC.;
CIRCLE K STORES, INC; KUM & GO,
L.C.; MARATHON PETROLEUM
COMPANY LP; MURPHY OIL USA,
INC.; PILOT TRAVEL CENTERS, LLC;
FLYING J INC.; PTCAA TEXAS, LP;
RACETRAC PETROLEUM, INC.;
QUIKTRIP CORPORATION; SHEETZ,
INC.; THE PANTRY, INC.; WAWA,
INC.,
        Objectors.

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:07-MD-01840-KHV)**

_____

10

Tristan L. Duncan, Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri, (William F. Northrip and Sarah Lynn Baltzell, Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri, Stephen R. McAllister, Thompson Ramsdell Qualseth & Warner, P.A., Lawrence, Kansas, and Jonathan S. Massey, Massey & Gail, LLP, Washington, D.C., with her on the briefs) for Speedway LLC, 7-Eleven, Inc., Circle K Stores, Inc., Kum & Go, L.C., Marathon Petroleum Company LLC, Murphy Oil USA, Inc., Pilot Travel Centers LLC, Flying J, Inc., The Pantry, Inc., QuikTrip Corporation, RaceTrac, Petroleum, Inc., Sheetz, Inc., and Wawa, Inc., Defendant-Appellants.

Theodore H. Frank, Competitive Enterprise Institute Center for Class Action Fairness, Washington, D.C., (Anna St. John and Adam E. Schulman, Competitive Enterprise Institute Center for Class Action Fairness, Washington, D.C., with him on the brief) for Amy Alkon, Theodore H. Frank, Melissa Holyoak, Nicolas S. Martin, and Adam Schulman, Objector-Appellants.

Joseph R. Palmore, Morrison & Foerster, LLP, Washington, D.C., (David F. McDowell, and Purvi G. Patel, Morrison & Foerster, LLP, Los Angeles, California, and Bryan J. Leitch, Morrison & Foerster, LLP, Washington, D.C., with them on the briefs) for Costco Wholesale Corporation, Defendant-Appellant.

Daniel V. Dorris, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, D.C., and Robert A. Horn, Horn Aylward & Bandy, LLC, Kansas City, Missouri, (Thomas V. Bender, Walters Bender Strohbehn & Vaughn, P.C., Kansas City, Missouri, Joseph A. Kronawitter, Horn, Aylward & Bandy, LLC, Kansas City, Missouri, David C. Frederick and Amelia I.P. Frenkel, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, D.C., with them on the briefs) for Plaintiff-Appellees

—————————————————————

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

—————————————————————

**MORITZ**, Circuit Judge.

—————————————————————

Consumers purchase gasoline by the gallon. But gas expands as it heats up. And that means the number of molecules—and, accordingly, the amount of energy— in a gallon of gas will vary based on the temperature at which it's dispensed. Yet retailers don't control for the effects of temperature when they sell gas to consumers.

11

So consumers who purchase gas dispensed at higher temperatures may be getting less energy than they expect.

These simple laws of physics gave rise to complex litigation. Several individuals in multiple states (collectively, the plaintiffs) brought class action lawsuits against various fuel retailers (collectively, the defendants) based on the defendants' failure to control for, or at least disclose, the effects of temperature on fuel. In 2007, the Judicial Panel on Multidistrict Litigation consolidated these cases and designated the District of Kansas as the transferee district.

After years of legal wrangling, several of the parties entered into settlement agreements, which the district court ultimately approved. These appeals arise from (1) the district court's approval of those settlement agreements and (2) its interpretation of one of them. We consolidated the appeals for procedural purposes and now affirm.

## BACKGROUND

### I. The Costco Settlement Agreement

The first defendant to settle was Costco Wholesale Corporation (Costco). Under Sections 4.2 and 4.3 of the Costco settlement agreement (the Costco Agreement), Costco agreed to convert pumps at its existing gas stations in certain states to Automatic Temperature Control (ATC) pumps, and to install ATC pumps at its new gas stations in certain states. And under Section 4.4, Costco agreed to a specific "[i]mplementation [p]eriod": it would "complete the conversion and

12

installation of ATC set forth in sections 4.2 and 4.3 . . . within five years" at a certain yearly rate. Costco App. 178.

But these requirements weren't absolute. Section 4.7 of the Costco Agreement contains the following language:

> **Other Agreements.** If at any time prior to the completion of conversion and installation of ATC, Class Counsel and Class Representatives agree to enter into any agreement with any person or company to resolve any action or any other pending or threatened claim concerning ATC that is materially more favorable to that person or company than this Amended Settlement Agreement is to Costco (including, without limitation, calling for a lower conversion percentage, slower rate of conversion to ATC or for completion of conversion to ATC at a later date than required by Section 4.4), Class Counsel and Class Representatives agree to notify Costco promptly of the terms of such agreement. At Costco's sole discretion, it may adopt the materially more favorable terms in any such agreement in place of its obligations under Section 4.4. Costco agrees to notify Class Counsel and Class Representatives in writing of any such election. The Parties agree that any change in Costco's obligations under Section 4.4 as a result of any such election that is not a change that is materially adverse to the Settlement Class does not require additional notice to the class.

*Id.* at 180.

The district court approved the Costco Agreement on April 24, 2012. Nearly two years later, several of the plaintiffs agreed, via a "STIPULATION OF DISMISSAL WITH PREJUDICE" (the Stipulation), to dismiss their individual claims against several other defendants. App. vol. 16, 4538. And unlike the Costco Agreement, the Stipulation didn't require any of those other defendants to implement ATC at all, let alone to do so by a certain date and on a certain schedule. Understandably viewing this result as more favorable than the one it obtained, Costco filed notice of its intent to invoke its rights under Section 4.7. It then asked the

13

district court to grant Costco leave to adopt the "terms" of the Stipulation and to dismiss the plaintiffs' claims against Costco with prejudice. Costco. App. 250.

The district court denied both requests. In doing so, it concluded that (1) Section 4.7 only applies to agreements that "concern the implementation of ATC"—e.g., agreements that "call[] for a lower conversion percentage, a slower rate of conversion to ATC[,] or completion of conversion to ATC at a later date than required by Section 4.4" of the Costco Agreement, *id.* at 255; and (2) because the Stipulation didn't require the dismissed defendants to implement ATC at all, it necessarily didn't "concern the implementation of ATC," *id.* at 254-55. Accordingly, the district court refused to let Costco adopt the "terms" in the Stipulation, *id.* at 250, or to dismiss the claims against Costco with prejudice.

## II.     The Remaining Settlement Agreements

In the meantime, the plaintiffs negotiated settlement agreements with 28 other defendants. For reasons we set forth in Discussion Section II, *infra*, only nine of those settlement agreements (plus the Costco Agreement) are at issue here: the plaintiffs' settlement agreements with defendants BP, Chevron, Citgo, ConocoPhillips, ExxonMobil, Shell, Sinclair, Sunoco, and Valero. These ten settlement agreements fall into two general categories, which we refer to as conversion settlements and fund settlements.

The Costco and Valero settlements are conversion settlements. Much like Costco, Valero agreed to convert existing pumps in certain states to ATC and to install ATC pumps at new stations in certain states.

14

The remaining settlement agreements are fund settlements. They require BP, Chevron, Citgo, ConocoPhillips, ExxonMobil, Shell, Sinclair, and Sunoco each to pay a certain sum—ranging from $61,000 to $5,000,000—into a common fund. Under the terms of the settlement agreements, portions of that fund may be used to (1) reimburse fuel retailers for expenses they incur if they convert to ATC; and (2) defray costs that state agencies incur if those states agree to permit or require ATC at resale. Neither the conversion settlements nor the fund settlements provide any money to class members.

As relevant here, two groups of objectors lodged objections to some or all of the relevant settlement agreements. We refer to the first group of objectors, comprising class members Amy Alkon, Nicolas Martin, Theodore H. Frank, Melissa Holyoak, and Adam Schulman, collectively as "Alkon." We refer to the second group of objectors, comprising non-settling defendants QuikTrip Corporation, 7-Eleven, Inc., Circle K Stores, Inc., Kum & Go, L.C., Marathon Petroleum Company LP, Murphy Oil USA, Inc., Pilot Travel Centers, LLC, Flying J, Inc., PTCAA Texas, LP, RaceTrac Petroleum, Inc., Sheetz, Inc., Speedway LLC, The Pantry, Inc., and Wawa, Inc., collectively as "Speedway."

Alkon objected to the settlement agreements on numerous grounds, arguing that (1) approval of the settlement agreements violates the First Amendment; (2) approval of the settlement agreements violates separation-of-powers principles; (3) ATC conversion harms some class members and confers no benefit on others; (4) the settlement agreements afford preferential treatment to class counsel by paving

15

the way for excessive attorney's fees; and (5) Fed. R. Civ. P. 23(b)(3)'s superiority requirement precludes class certification. Speedway advanced similar objections, arguing that approval of the settlement agreements (1) violates the First Amendment; (2) violates Article III of the United States Constitution; and (3) poses separation-of-powers problems. The district court addressed and rejected these objections and ultimately approved the settlement agreements.

Costco now appeals the district court's order refusing to allow it to exercise its rights under Section 4.7 of the Costco Agreement. Alkon and Speedway both appeal the district court's order approving the remaining settlement agreements, and Alkon additionally appeals the district court's order approving the Costco Agreement.

## DISCUSSION

## I. Costco isn't entitled to invoke its rights under Section 4.7.

Costco asserts that the district court erred in refusing to allow it to exercise its rights under Section 4.7 of the Costco Agreement. Because this argument presents a question of contract interpretation, our review is de novo. *In re Universal Serv. Fund Tel. Billing Practice Litig.*, 619 F.3d 1188, 1211 (10th Cir. 2010).

In denying Costco's motion, the district court relied in part on the fact that Section 4.7 applies only if "Class Counsel and Class Representatives agree to enter into any agreement with any person or company to resolve any action or any other pending or threatened claim *concerning ATC*." Costco App. 180 (emphasis added). Specifically, the district court concluded that the phrase "concerning ATC" modifies

16

the term "agreement," and thus that only agreements "concerning ATC" can trigger Costco's rights under Section 4.7.

Costco argues this was error. Citing the last-antecedent rule, it maintains that the phrase "concerning ATC" modifies its nearest antecedents—i.e., "claim" and "action"—and not, as the district court found, the more remote term "agreement." *See Caughey v. Emp't Sec. Dep't*, 503 P.2d 460, 463 (Wash. 1972)[1] (explaining that "qualifying words and phrases" typically "refer to the last antecedent").

But as the plaintiffs correctly point out, the last-antecedent rule only operates if "no contrary intention appears" in the contract. *Id.* And here, the district court implicitly concluded that Section 4.7's parenthetical list of examples evinces just such a "contrary intention." *Id.*

We agree. By giving a parenthetical list of examples of agreements that concern ATC—i.e., agreements that "call[] for a lower conversion percentage, slower rate of conversion to ATC, or for completion of conversion to ATC at a later date"— rather than examples of "claims" or "actions" concerning ATC, Costco App. 180, Section 4.7 expresses an "intention" that is "contrary" to the general rule that "qualifying words and phrases refer to the last antecedent," *Caughey*, 503 P.2d at 463. Specifically, Section 4.7's parenthetical list indicates that rather than modifying its nearest antecedents, the phrase "concerning ATC" instead modifies the term "agreement." Costco App. 180.

---

[1] The Costco Agreement specifies that it "is intended to and shall be governed by the laws of the State of Washington." Costco App. 134.

17

Costco resists this conclusion. It points out that Section 4.7's parenthetical list of examples is preceded by the phrase "including, without limitation." *Id.* Thus, Costco concludes, the district court erred in using Section 4.7's parenthetical list of specific examples to limit the general phrase "any agreement" to agreements that are similar to those in Section 4.7's parenthetical list—i.e., agreements that concern ATC.[2] *Id.*

In support, Costco cites *United States v. West*, 671 F.3d 1195 (10th Cir. 2012). There, we acknowledged that the principle of ejusdem generis "[o]rdinarily . . . limits general terms which follow specific ones to matters similar to those specified." *Id.* at 1200 (alterations in original) (quoting *Gooch v. United States*, 297 U.S. 124, 128 (1936)). But we declined to apply that interpretive canon to the statute at issue in *West*, in part because Congress prefaced that statute's list of examples with the phrase "including, but not limited to." *Id.* at 1200 (emphasis omitted) (quoting 21 U.S.C. § 860(e)(1)); *see also id.* at 1201-02.

Much like the statute at issue in *West*, Section 4.7 prefaces its list of examples with the phrase "including, without limitation." Costco App. 180; *see* 671 F.3d at 1200. But unlike our task in *West*—which was to discern "Congress' intent in

---

[2] In its reply brief, Costco advances a different, albeit related, argument: it asserts that the district court erred in relying on Section 4.7's parenthetical list of examples because "allowing a 'parenthetical to drive the interpretation of the whole provision' would impermissibly permit the 'tail to wag the dog.'" Costco Rep. Br. 9 (quoting *Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 990 (4th Cir. 1996)). Because Costco didn't advance this argument in its opening brief, we decline to consider it. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[A] party waives issues and arguments raised for the first time in a reply brief." (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009))).

18

enacting" the relevant statute, 671 F.3d at 1200—our task here is to determine how the Supreme Court of Washington would interpret Section 4.7, *cf. Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1093 (10th Cir. 2010) ("[O]ur task in diversity cases is to predict how the state supreme court would rule."). And that court recently applied ejusdem generis to a statutory list despite the presence of a similar introductory phrase. *See State v. Larson*, 365 P.3d 740 (Wash. 2015).

In *Larson*, the court examined a statute that prohibited, in relevant part, the "possession of an item, article, implement, or device designed to overcome security systems *including, but not limited to*, lined bags or tag removers." *Id.* at 741 (emphasis added) (quoting Wash. Rev. Code § 9A.56.360(1)(b)). The court agreed with the State that "[t]he statutory language 'including, but not limited to'" indicated that "lined bags and tag removers" were "illustrative examples rather than an exhaustive list." *Id.* at 743 (quoting § 9A.56.360(1)(b)). But "contrary to the State's assertions," the court also concluded that those "illustrative examples were intended to limit the scope of the statute" to similar items. *Id.* (emphasis omitted). And in reaching that conclusion, the court applied the limiting canon of ejusdem generis. *See id.*

Under *Larson*, we conclude that Section 4.7's use of the phrase "including, without limitation" indicates that agreements "calling for a lower conversion percentage, slower rate of conversion to ATC, or for completion of conversion to ATC at a later date," Costco App. 180, are "illustrative examples" of the types of

19

agreements that will trigger Section 4.7, "rather than an exhaustive list" of the agreements that will do so, 365 P.3d at 743. But, under *Larson*, we likewise conclude that Section 4.7's list of "illustrative examples" nevertheless demonstrates an "inten[t] to limit the scope of" Section 4.7 to agreements that are "similar" to those examples. 365 P.3d at 743. And, under *Larson*, we reach that conclusion despite the fact that Section 4.7 prefaces its list of illustrative examples with the phrase "including, without limitation."[3] Costco App. 180; *see Larson*, 365 P.3d at 743.

Alternatively, even assuming that ejusdem generis applies, Costco argues that "the most general quality shared by Section 4.7's [examples] is . . . that they all minimize or eliminate Costco's obligations under the settlement," not that they all concern the implementation of ATC. Costco Rep. Br. 11. And because the Stipulation—if Costco were allowed to adopt it—would share this general quality, Costco asserts that the Stipulation triggered Costco's rights under Section 4.7.

We find this argument foreclosed by Section 4.7's plain language, which only allows Costco to "adopt the materially more favorable terms in any . . . agreement in

_____

[3] As Costco points out, "courts have historically employed the principle of *ejusdem generis* to limit general terms following specific terms." *West*, 671 F.3d at 1200 (emphasis omitted). But Washington applies the canon more broadly. *See Larson*, 365 P.3d at 743 (applying ejusdem generis where list of specific terms followed more general ones); *Sw. Wash. Chapter, Nat. Elec. Contractors Ass'n v. Pierce Cty.*, 667 P.2d 1092, 1096 (Wash. 1983) (explaining that ejusdem generis applies to "pattern such as '[specific], [specific], or [general]' *or* '[general], including [specific] and [specific]'" (alterations in original) (emphasis added)). Accordingly, the fact that Section 4.7's parenthetical list of specific examples follows the general term "any agreement," Costco. App. 180, rather than vice versa, doesn't alter our analysis.

20

place of its obligations *under Section 4.4*." Costco App. 180 (emphasis added). Section 4.4 requires Costco to "complete the conversion and installation of ATC set forth in sections 4.2 and 4.3 above within five years of the Effective Date in accordance with the following schedule." *Id.* at 178. Sections 4.4.1 through 4.4.5 then set out the schedule under which Costco must implement ATC. In comparison, Section 4.2 states that Costco will convert pumps at existing stations to ATC. And Section 4.3 states that Costco will install ATC pumps at any new stations.

By specifying that Costco may only replace its obligations under Section 4.4—rather than its obligations under Sections 4.2 and 4.3—Section 4.7 operates to allow Costco to adopt from other agreements only those more favorable terms that govern *how quickly and thoroughly* it must implement ATC under Section 4.4, not to substitute more favorable terms governing whether or not it must implement ATC *at all* under Sections 4.2 and 4.3.

Costco disagrees with this analysis. It insists that Section 4.7 allows it to replace not only its "obligations under Section 4.4, but also those listed in Sections 4.2 and 4.3." Costco Aplt. Br. 34. In support, it points out that Sections 4.2, 4.3, and 4.4 are all explicitly "subject to" one another and to Section 4.7. *Id.* at 35 (quoting Costco App. 177-78).

The plaintiffs argue that Costco forfeited this argument by failing to raise it before the district court. In response, Costco's reply brief directs our attention to a single sentence in its briefing below. There, Costco pointed out that Sections 4.2 and 4.3 "expressly provide that Costco's obligation to install ATC is '[s]ubject to the

21

other provisions in this Agreement,'" including Section 4.7. Costco App. 220 (alternation in original) (quoting Costco App. 177).

But even assuming we could characterize this single sentence as "argument," Costco "failed to identify in its *opening* brief where it raised this argument before the district court." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1540 n.3 (10th Cir. 1996) (emphasis added) (declining to consider appellant's argument where appellant failed to provide record citation in opening brief establishing it raised argument below); *see also* 10th Cir. R. 28.2(C)(2) ("For each issue raised on appeal, all briefs must cite the precise reference in the record where the issue was raised and ruled on.").

Moreover, on appeal, Costco doesn't merely argue that Sections 4.2 and 4.3 are subject to Section 4.7, as it (at least cursorily) suggested below. Instead, Costco argues on appeal that Sections 4.2, 4.3, and 4.4 are all subject to *each other*, and that all three sections are therefore "interdependent" and "stand or fall together." Costco Aplt. Br. 35. Because the plaintiffs are correct that Costco (1) didn't raise this specific argument below and (2) doesn't attempt to establish plain error on appeal, we decline to consider this argument. *See Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013) (explaining that forfeiture rule applies to new theory presented on appeal, even if that theory falls under same general category as argument presented below); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) (noting that failure to argue for plain error on appeal "surely marks the end of the road" for forfeited argument).

Further, we reject the suggestion Costco did make below—i.e., that simply because Sections 4.2 and 4.3 are "[s]ubject to" Section 4.7 means that Costco can replace its obligations under Sections 4.2 and 4.3, as opposed to its obligations under Section 4.4, with more favorable terms. Costco App. 177. First, if this were the case, the parties would have had no reason to specifically refer to Section 4.4 in Section 4.7; Section 4.4 is, like Sections 4.2 and 4.3, also "[s]ubject to" Section 4.7. Costco App. 178. Second, when viewed together, Section 4.7's list of representative examples—e.g., "calling for a lower conversion percentage, slower rate of conversion to ATC, or for completion of conversion to ATC at a later date than required by Section 4.4"—and its explicit language allowing Costco to "adopt . . . materially more favorable terms . . . *in place of its obligations under Section 4.4*," Costco App. 180 (emphasis added), make clear that Section 4.7 is only triggered by agreements that contain more favorable terms concerning *how* to implement ATC under Section 4.4, not *whether* to implement ATC under Section 4.2 and 4.3.

Costco again disagrees. It insists that Section 4.7's examples are actually consistent with applying Section 4.7 to agreements that, like the Stipulation, don't require *any* ATC implementation. "For example," Costco argues, "'a lower conversion percentage' is consistent with the [S]tipulation's terms requiring a zero 'conversion percentage.'" Costco Aplt. Br. 36 (quoting Costco App. 180). Likewise, "a 'slower rate of conversion to ATC' is consistent with the [S]tipulation's terms requiring no 'rate of conversion to ATC.'" *Id.* (quoting Costco App. 180). And finally, "'completion of conversion to ATC at a later date' is consistent with the

23

[S]tipulation's terms requiring no 'completion of conversion to ATC' at any date."
*Id.* (quoting Costco App. 180).

We reject this argument. First, contrary to Costco's characterization, the Stipulation doesn't actually contain any such express "terms." *Id.* It simply states that the individual defendants "are dismissed with prejudice from the separate civil actions." App. Vol. 16, 4538.

Second, even if we were inclined to treat such "terms," Costco Aplt. Br. 36, as implicit in the Stipulation, the fact remains that Washington law requires us to "impute [to the parties] an intention corresponding to the reasonable meaning of the words [they] used" in drafting the Costco Agreement. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005); *see id.* ("We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."). And rather than giving the words in Section 4.7's examples their "reasonable," "ordinary," and "popular" meanings, *id.*, Costco's argument gives them tortured and unnatural ones. We don't ordinarily say a car is "moving zero miles per hour"; we say it isn't moving. We don't typically say a car is "accelerating at a rate of zero miles per hour"; we say it isn't accelerating. And we certainly don't say that a car that's never coming will "arrive at a later date"; we simply say it will never arrive. Thus, Section 4.7's examples don't support Costco's position.

Costco advances one final argument on appeal. It asserts that the district court's conclusion that Section 4.7 only applies to agreements that concern *how* to

24

implement ATC, as opposed to *whether* to do so, undermines Section 4.7's purpose. In support, Costco points out that district court's interpretation would allow Costco to assert its rights under Section 4.7 in response to a later agreement that contains materially more favorable terms—"but only if such terms are not *too* 'materially more favorable.'" Costco Aplt. Br. 33. In other words, while Costco could adopt later settlement terms that require a *slower* conversion to ATC, it couldn't adopt later settlement terms that would require *no* conversion to ATC. *Id.* And according to Costco, this result is contrary to "the parties' intent." *Id.* at 34.

But as the plaintiffs point out, this argument asks the panel to look beyond the plain language of Section 4.7 to the parties' subjective intent in drafting that agreement. And under Washington law, "the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." *Hearst*, 115 P.3d at 267. Here, we can determine the parties' intent "from the actual words [they] used." *Id.* Specifically, we can determine their intent from (1) Section 4.7's language indicating that Section 4.7 only applies to agreements "concerning ATC," Costco App. 180; (2) Section 4.7's parenthetical list of examples, which all describe how a party must implement ATC, as opposed to whether it must do so; and (3) Section 4.7's repeated references to Section 4.4, which likewise details how Costco must implement ATC, as opposed to Sections 4.2 and 4.3, which instead explain whether it must do so. Taken together, these three aspects of Section 4.7 demonstrate that the parties never intended to allow Costco to replace its obligations regarding *whether* to implement ATC under Sections 4.2 and 4.3 with more favorable terms. Instead, they only intended to allow Costco to replace its obligations

25

regarding *how* to implement ATC under Section 4.4 with such terms. And because that intent is evident from "the actual words [the parties] used" in Section 4.7, we decline to look beyond those words to the parties' subjective intent. *Hearst*, 115 P.3d at 267. Accordingly, we affirm the district court's order denying Costco's motion to invoke its rights under Section 4.7.

## II. The district court didn't abuse its discretion in approving the settlement agreements.

Both Speedway and Alkon appeal the district court's order approving the remaining 28 settlement agreements. And Alkon additionally appeals the district court's order approving the Costco Agreement. But before we may consider the merits of their challenges, we must first determine whether Speedway and Alkon have standing to advance them.

### A. Although Speedway lacks standing to object to any of the settlement agreements, Alkon has standing to challenge 10 of them.

Speedway asserts that it objected to all of the settlement agreements except the Costco agreement. But the district court concluded that Speedway failed to demonstrate it had Article III standing to challenge any of them. Speedway challenges this ruling on appeal, arguing that (1) it has standing under the plain-legal-prejudice doctrine; (2) it has standing under *Bond v. United States*, 564 U.S. 211 (2011); and (3) it has standing to challenge eight of the settlement agreements as a member of the underlying settlement classes.

"The doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III . . . .'" *Ne. Fla. Chapter of Associated Gen.*

26

*Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663 (1993) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, a party must demonstrate (among other things) an "injury in fact," *id.* (quoting *Lujan*, 504 U.S. at 560)—i.e., "an invasion of a legally protected interest," *id.*

Non-settling defendants like Speedway "generally have no standing to complain about a settlement." *Weinman v. Fid. Capital Appreciation Fund* (*In re Integra Realty Res., Inc.*), 262 F.3d 1089, 1102 (10th Cir. 2001) (quoting *Transamerican Ref. Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992)). That's because they lack "a legally protected interest in the settlement" and therefore can't satisfy Article III's injury-in-fact requirement. *Id.* But as Speedway points out, "[c]ourts have recognized a limited exception to this rule where nonsettling parties can demonstrate they are 'prejudiced' by a settlement." *Id.* "'[P]rejudice' in this context means 'plain legal prejudice,' as when 'the settlement strips the party of a legal claim or cause of action.'" *Id.* (alteration in original) (quoting *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993)).

Here, Speedway asserts it qualifies for this exception because (1) "the settlements prejudice [its] legal right to conduct business as [it has] historically done and as currently authorized by law," Spdwy. Aplt. Br. 48; and (2) the settlements burden its speech. But as the plaintiffs suggest, these alleged injuries don't rise to the level of plain legal prejudice as we have defined it.[4] *See New England Health Care Emps. Pension Fund v. Woodruff*,

---

[4] Perhaps realizing as much, Speedway argues for the first time in its reply brief that the settlement agreements "risk depriving [it] of the defenses asserted in this litigation." Spdwy. Rep. Br. 20. But Speedway conceded below that the settlement agreements didn't "place[]" Speedway "at a 'tactical' disadvantage in the

27

512 F.3d 1283, 1288 (10th Cir. 2008) (explaining that plain legal prejudice "include[s] any interference with a party's contract rights or a party's ability to seek contribution or indemnification," and that "[a] party also suffers plain legal prejudice if the settlement strips the party of a legal claim or cause of action, such as a cross[-]claim or the right to present relevant evidence at trial" (quoting *Weinman*, 262 F.3d at 1102-03)). Thus, we agree with the district court that Speedway lacks standing to object to any of the settlements on this basis.

Alternatively, Speedway cites *Bond*, 564 U.S. 211, for the proposition that "when a federal branch [of government] acts in excess of its delegated power[s]," then individuals who are "adversely affected . . . have standing to object." Spdwy. Aplt. Br. 52. Because Speedway alleges that (1) the district court acted in excess of its delegated powers by approving the settlements, and (2) the settlements adversely affect Speedway, it argues that it has standing to object to the settlements under *Bond*.

First, we question whether Speedway adequately preserved this argument for appeal; below, Speedway confined its analysis of *Bond* to a one-paragraph footnote. *Cf. United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."). Perhaps that explains why the district court didn't address it. And perhaps we need not address it either. *See Singleton v.*

_____

underlying litigation." App. vol. 20, 5510. And in any event, Speedway didn't raise this argument in its opening brief. Accordingly, we deem the argument waived and decline to consider it. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." (quoting *M.D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n. 7 (10th Cir. 2009))).

28

*Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc.*, 454 F.3d 1128, 1142 (10th Cir. 2006) (declining to address issue that district court didn't rule on, even though parties fully briefed it below).

In any event, even if we assume Speedway preserved this argument for appeal, it conflates Article III standing, which is at issue here, with prudential standing, which was at issue in *Bond. See Sac & Fox Nation of Mo. v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000) (distinguishing between Article III standing and prudential standing and explaining that, under latter doctrine, "a plaintiff generally must assert its own rights, rather than those belonging to third parties").

In *Bond*, there was no question that the defendant had Article III standing to challenge the criminal statute at issue; her conviction under that statute resulted in her incarceration, and her incarceration "constitute[d] a concrete injury" that was "redressable by invalidation of the conviction." 564 U.S. at 217 (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Instead, the question in *Bond* was whether the defendant had *prudential* standing to challenge the statute on certain grounds. Citing the Tenth Amendment, *id.* at 214, she attempted to challenge the statute on the basis that it "interfere[d] with the powers reserved to States," *id.* at 216; *see id.* at 217, 220, 225.

Citing "the prudential rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties,'" Court-appointed amicus insisted this argument was one that the "States and States alone" could make. *Id.* at 220 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

29

The Court disagreed, reasoning that "[t]he limitations . . . federalism entails are not . . . a matter of rights belonging only to the States"; rather, "[f]ederalism also protects the liberty of all persons within a State." *Id.* at 222. Accordingly, the Court held that there was "no basis in precedent or principle to deny [the defendant's] standing to raise her claims." *Id.* at 226.

But in doing so, the Court reiterated that "[a]n individual who challenges federal action on these grounds is, of course, subject to the Article III requirements." *Id.* at 225. And it's those very "Article III requirements" that pose a problem for Speedway here. *Id.* As discussed above, "[n]on-settling defendants generally have no [Article III] standing to complain about a settlement," *Weinman*, 262 F.3d at 1102 (quoting *Transamerican Ref. Corp.*, 952 F.2d at 900), because they lack "a legally protected interest in the settlement" and therefore can't satisfy Article III's injury-in-fact requirement, *id.* And while there exists an exception to this general rule for parties that can demonstrate plain legal prejudice, *see id.*, Speedway fails to satisfy that exception for the reasons discussed above.

Finally, even assuming it lacks standing to challenge all of the settlement agreements as a non-settling defendant, Speedway asserts that it nevertheless has class-member standing to challenge eight of those settlement agreements: Valero, Chevron, CITGO, Sinclair, Shell, ConocoPhillips, BP, and Exxon. *See Tennille v. W. Union Co.*, 785 F.3d 422, 429 (10th Cir. 2015) (noting that objectors had standing because they were class members).

The district court rejected Speedway's class-member argument below. In doing so, it pointed out that the court's Notice to Class Members outlined the following requirements for objecting to the settlements: "To object, you must send a letter via first class mail stating which Settlement(s) you object to and why. Be sure to include your name, address, telephone number and signature. You must mail the objection to [the Clerk of the Court, class counsel and defense counsel] no later than March 23, 2015." App. vol. 27, 7522 (quoting App. vol. 27, 7547).

On March 23, 2015, Speedway filed its initial objection. But according to the district court's order, that objection "did not identify which settlement agreements [Speedway] objected to *based on class membership*." App. vol. 27, 7523 (emphasis added). Instead, it merely asserted that (1) "[*s*]*ome* of the Objectors are members of the settlement classes as defined in *some* of the . . . Settlements and have standing to object to *those* settlements for that reason as well," App. vol. 20, 5513 (emphases added), and (2) because "*some* of objectors' employees . . . bought retail fuel while on business trips for which they were reimbursed by their respective companies . . . , they are members of *these* settlement classes," *id.* at 5514 (emphases added). And while Speedway appended a declaration to its objection in which a Marathon employee attests to purchasing gas while on official business, the district court noted that the declaration doesn't "identify from which retailers [the employee] purchased fuel." App. vol. 27, 7523.

Based on these perceived deficiencies in Speedway's objection, the district court ruled that Speedway "did not timely identify who was objecting based on class membership and to which settlements they objected." *Id.* Thus, it concluded, Speedway's

"objections based on class membership [were] untimely and not properly before the [c]ourt." *Id.* at 7524.

On appeal, Speedway challenges the district court's ruling, arguing that "[c]lass membership need not be supported with evidence at the time an objection is filed." Spdwy. Aplt. Br. 47. But Speedway's argument misconstrues the district court's ruling. The district court didn't find Speedway's objection deficient because Speedway failed to prove class membership, as Speedway alleges. Instead, the district court found Speedway's objection deficient because Speedway failed to "timely identify who was objecting based on class membership and to which settlements they objected." App. vol. 27, 7523. In other words, the district court didn't require Speedway to *prove* membership in any particular class; it merely required Speedway to specifically *allege* (1) the class or classes of which it was a member, and (2) the settlements it was objecting to on that basis. And it found that Speedway failed to timely do so.

In short, the district court concluded that Speedway's "objections based on class membership" weren't "properly before the [c]ourt" because Speedway failed to comply with the district court's notice requirements. *Id.* at 7524. And Speedway makes no attempt in its opening brief to argue that such a decision was beyond the bounds of the district court's discretion.[5] *See In re Deepwater Horizon*, 739 F.3d 790, 808-09 (5th Cir. 2014) (concluding that "district court plainly acted within its discretion" in declining to

---

[5] Speedway does attempt to address this issue in its reply brief, arguing for the first time that it did, in fact, "[c]ompl[y] with" the district court's notice requirements. Spdwy. Rep. Br. 17. But arguments raised for the first time in a reply brief are waived. *See Reedy*, 660 F.3d at 1274.

consider objections where objectors failed to timely comply with requirements of court's

"Preliminary Approval Order"). Under these circumstances, we won't disturb the district

court's ruling that Speedway's objections weren't properly before it. *See Reedy,* 660 F.3d

at 1274 (declining to address propriety of district court's ruling because appellant failed

to "challenge the court's *reasoning* on th[at] point" (emphasis added)). Accordingly, we

decline to consider Speedway's objections to the settlement agreements.

That leaves Alkon. The plaintiffs don't dispute that Alkon is indeed a member of

10 of the settlement classes: Costco, BP, Chevron, Citgo, ConocoPhillips, ExxonMobil,

Shell, Sinclair, Sunoco, and Valero. Accordingly, Alkon has standing to challenge those

10 settlement agreements. *See Tennille*, 785 F.3d at 429 (noting that objectors had

standing because they were class members).

But Alkon doesn't assert it has standing to challenge the remaining 19 settlement

agreements, and has therefore waived any argument that it does. *See Colo. Outfitters

Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016). Accordingly, we confine our

remaining analysis to Alkon's challenges to the 10 settlement agreements listed above.[6]

In doing so, we "review the [district] court's approval of the settlement agreement[s] for

an abuse of discretion." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1186

(10th Cir. 2002) (quoting *United States v. Hardage*, 982 F.2d 1491, 1495 (10th Cir.

1993)). To the extent that several of Alkon's arguments present constitutional questions,

---

[6] In evaluating Alkon's arguments, we consider those portions of Speedway's opening brief that Alkon adopts by reference. *See* Fed. R. App. P. 28(i) ("In a case involving more than one appellant or appellee, including consolidated cases, . . . any party may adopt by reference a part of another's brief.").

our review is de novo. *See Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1199 (10th Cir. 2000).

> **B.** **The district court's approval of the fund settlements doesn't violate the First Amendment.**

The fund settlements set aside money for state regulators to defray the costs associated with enacting and implementing new regulatory programs for conversion to ATC. Alkon argues this aspect of the agreements requires absent class members to subsidize the plaintiffs' lobbying efforts aimed at obtaining regulatory approval for ATC. And according to Alkon, this amounts to the "compelled funding of speech" in violation of the First Amendment. Spdwy. Aplt. Br. 37; *see* Alk. Aplt. Br. 45.

But as the plaintiffs point out, the First Amendment only limits state—as opposed to private—action. *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1276 (10th Cir. 2005). And the plaintiffs insist that neither the district court's approval nor its potential enforcement of these private settlement agreements constitutes state action for purposes of the First Amendment. *Cf. Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1192 (11th Cir. 1995) ("[T]he mere confirmation of a private arbitration award by a district court is insufficient state action to trigger the application of the Due Process Clause.").

Citing *Shelley v. Kraemer*, 334 U.S. 1 (1948), Alkon disagrees. In *Shelley*, the Court held that a state court's enforcement of private covenants designed to prevent people of color from purchasing real estate constituted state action for purposes of the Equal Protection Clause. 334 U.S. at 18-20. Under *Shelley*, Alkon argues, "[t]he judicial

34

imprimatur of the approval orders . . . demonstrate[s]" that the settlement agreements at issue here "are more than merely private contracts." Alk. Aplt. Br. 38.

But as the plaintiffs note, courts have uniformly declined to extend *Shelley* beyond cases involving discrimination. *See, e.g., Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 386 n.1 (7th Cir. 2014) ("However, *Shelley*'s holding has never been applied outside the context of race discrimination."); *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 998 (9th Cir. 2013) (noting that "*Shelley*'s attribution of state action to judicial enforcement has generally been confined to the context of discrimination claims under the Equal Protection Clause"); *Davis*, 59 F.3d at 1191 ("The holding of *Shelley*, however, has not been extended beyond the context of race discrimination."); *United Egg Producers v. Standard Brands, Inc.*, 44 F.3d 940, 943 (11th Cir. 1995) ("[T]he reach of *Shelley* remains undefined outside of the racial discrimination context.").

Alkon doesn't suggest that the settlement agreements implicate the Equal Protection Clause. Nor does it cite any cases extending *Shelley* outside of that context or present a reasoned argument why we should do so here.[7] Accordingly, we conclude that the district court's approval of the settlement agreements doesn't constitute state action. And absent any state action, Alkon's First Amendment argument fails. *See Dominion Video Satellite, Inc.*, 430 F.3d at 1276.

---

[7] In its reply brief, Alkon argues, "[The p]laintiffs' response that the settlements are purely private arrangements devoid of any state action has no persuasive force as applied to the millions of absent class members compelled to donate funds to support a controversial political cause." Alk. Rep. Br. 25. But Alkon provides neither argument nor authority to support this assertion. Accordingly, we decline to consider it. *Cf. Hardman*, 297 F.3d at 1131 ("Arguments raised in a perfunctory manner . . . are waived.").

35

## C. The district court's approval of the settlement agreements doesn't violate Article III.

Next, Alkon asserts that the settlement agreements violate Article III and separation of power principles for various reasons. Before we address the merits of some of these arguments, we first explain why we decline to address the merits of others.

First, for the reasons discussed below, we decline to address Alkon's assertion that the district court lacked Article III authority to approve the settlement agreements because (1) those settlement agreements don't actually redress the plaintiffs' alleged injuries; (2) whether the settlement agreements will actually provide any redress for the plaintiffs' alleged injuries is contingent upon the actions of third-party actors, e.g., state legislatures; and (3) the settlement agreements aim to change the law, rather than to redress an injury caused by a violation of existing law.

We agree with Alkon that, to establish Article III standing, "a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). The problem is that Alkon makes no effort to explain how Article III's redressability requirement operates in the context of a settlement agreement. Alkon appears to be suggesting that when the parties to a settlement agreement ultimately agree to a remedy that doesn't actually and fully redress a plaintiff's alleged injury, that factor somehow operates to retroactively dissolve the plaintiff's Article III standing to bring—and thus a federal court's jurisdiction to hear— that plaintiff's claims in the first place. But we know of no authority that would support this argument. And Alkon cites none. Accordingly, we find this argument inadequately

36

briefed and decline to consider it. *See* Fed. R. App. P. 28(a)(8)(A) (requiring argument section of appellant's brief to contain "contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies"); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are . . . inadequately presented[] in an appellant's opening brief.").

Likewise, we decline to consider Alkon's assertion that the conversion settlement agreements constitute advisory opinions and therefore run afoul of Article III. *See Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 715 (6th Cir. 2011) ("The 'case or controversy' requirement prohibits all advisory opinions . . . ."). Here, the Valero and Costco settlement agreements contain releases enjoining class members from suing based on "actions taken by [Valero and Costco] that are authorized or required by" the agreements. Alk. Aplt. Br. 31. Alkon alleges that if the "plaintiffs tried to bring a lawsuit against Costco today contending that its gasoline sales practices in 2017 will violate consumer law, the complaint would be dismissed as unripe." *Id.* at 35. Yet "just because [the plaintiffs] changed the cover sheet to say 'Proposed Settlement' rather than 'Complaint,'" Alkon laments, the parties were able to "induce[] the district court to issue an advisory opinion that no class member may proceed against Costco's and Valero's future practices." *Id.* But again, Alkon doesn't cite any authority suggesting that a district court's approval of a private settlement agreement containing a future-conduct release constitutes an advisory opinion. And again, its failure to do so waives this argument.

Finally, we decline to consider Alkon's related argument that the future-conduct releases in the conversion-settlement agreements purport to release claims that aren't

"based on the identical factual predicate as that underlying the claims in the settled class action." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). Here, the underlying claims against Costco and Valero are based on Costco and Valero's *failure* to use ATC. Yet the settlement agreements purport to release future claims against Costco and Valero for *using* ATC, as the settlements require them to do. And Alkon makes a convincing argument that using ATC and not using ATC aren't identical factual predicates; rather, they're opposite ones.

But despite its obligation to do so, Alkon doesn't provide a record citation establishing that it raised this identical-factual-predicate argument below. *See* 10th Cir. R. 28.2(C)(2); *Harolds Stores, Inc*, 82 F.3d at 1541 n.3. And our independent review of the record suggests it didn't. Moreover, Alkon fails to argue for plain error on appeal. And that "surely marks the end of the road for" this argument on appeal. *Richison*, 634 F.3d at 1131.

Turning next to the arguments that Alkon has adequately preserved and briefed, it first argues that the district court abused its discretion in approving both the fund and conversion settlement agreements because (1) regulators and policymakers have long debated requiring or authorizing ATC at retail but have ultimately "chosen not to," Spdwy. Aplt. Br. 28; (2) selling gas by the gallon is lawful; (3) deciding whether to use ATC is a policy decision best left to the legislature; (4) the district court made an impermissible policy judgment about ATC when it found that class members would derive some benefit from the settlements to the extent that the settlements will increase the odds of conversion to ATC; (5) what the plaintiffs actually seek here is a change in

38

the existing law, which is a political remedy, not a judicial one; and (6) the district court lacked authority to provide that political remedy under Article III.

But as the district court reasoned, the settlements don't actually change the law. True, the fund settlement agreements remove one disincentive to implementing ATC by offering funds to reimburse state regulators for costs incurred as a result of conversion. But the district court didn't order states to require, or even allow, conversion to ATC; that decision remains in the hands of state lawmakers—a fact that Alkon concedes (and in fact relies on) in arguing that the plaintiffs can't satisfy Article III's redressability requirement. Thus, contrary to Alkon's argument, the district court didn't usurp the legislature's role by "altering the method of sale cooperatively established by Congress and the States," Spdwy. Aplt. Br. at 30; instead, policy decisions about whether to allow or require ATC remain with state policy makers.

Second, Alkon says a court can't "approve a class settlement based on an unanchored belief that the settlement would further the public interest." *Id.* at 31. In support, it cites *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). But even assuming that *Amchem* supports this general assertion, the district court in this case didn't approve the settlements based on "an unanchored belief that the settlement would further the public interest," Spdwy. Aplt. Br. 31; it made a finding that the settlements would benefit the class members.

Third, Alkon argues that in approving the settlements, the district court violated the Rules Enabling Act. *See* 28 U.S.C. § 2072(b) (explaining that Federal Rules "shall not abridge, enlarge or modify any substantive right"). In support, Alkon cites *Authors Guild*

39

*v. Google Inc.*, 770 F. Supp. 2d 666 (S.D.N.Y. 2011). There, the district court ruled that a settlement agreement ran afoul of the Rules Enabling Act because it "attempt[ed] to use the class action mechanism to implement forward-looking business arrangements that [went] far beyond the dispute before the [c]ourt in th[at particular] litigation." *Id.* at 677.

But as the plaintiffs point out, at least two of our sister circuits have since concluded that the Rules Enabling Act has no application in this context. *See Marshall v. Nat'l Football League*, 787 F.3d 502, 511 n.4 (8th Cir. 2015) (concluding that district court's approval of settlement agreement "is not a 'substantive adjudication of the underlying causes of action,' and therefore . . . does not implicate the Rules Enabling Act") (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173 n.8 (3d Cir. 2013)), *cert. denied*, 136 S. Ct. 1166 (2016); *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 313 (3d Cir. 2011) ("In the absence of a finding that plaintiffs are actually entitled to relief under substantive state law, we reiterate that a court does not 'abridge, enlarge, or modify any substantive right' by approving a voluntarily-entered class settlement agreement." (quoting § 2072(b))); *cf. Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1092-93 (6th Cir. 2016). We find these authorities persuasive. Accordingly, we reject this argument.

**D.**    **Attorney's fees don't render the district court's approval of the settlement agreements an abuse of discretion.**

A district court may approve a settlement agreement "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). We review a district court's approval of a settlement agreement under Rule 23(e)(2) for an abuse of

discretion. But we review any factual findings for clear error. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1186-87 (10th Cir. 2002).

This court has "noted four factors to be considered in assessing whether a proposed settlement is fair, reasonable and adequate," *id.* at 1188:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Id.* (quoting *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002)).

Here, Alkon argues that an additional factor rendered the district court's approval of the settlement agreements an abuse of discretion. Alkon points out that the settlement agreements contemplate awarding millions of dollars in attorney's fees and argues that this aspect of the settlement agreements makes class counsel—rather than class members—the primary beneficiaries of those agreements.[8] According to Alkon, Rule 23(e) simply doesn't permit such a result.[9]

---

[8] Alkon doesn't challenge the district court's ultimate award of attorney's fees. Instead, it argues only that the amount of attorney's fees that the settlement agreements permitted class counsel to request is so high as to render the district court's approval of those agreements an abuse of discretion.

[9] Alkon asserts that any refusal to consider this aspect of the settlement agreements in determining whether the district court abused its discretion would create a circuit split. But for purposes of this case, we need not affirmatively resolve

We agree with Alkon that class action settlements pose obvious conflict-of-interest problems. "The defendant cares only about the size of the settlement, not how it is divided between attorneys' fees and compensation for the class. From the selfish standpoint of class counsel and the defendant, therefore, the optimal settlement is one modest in overall amount but heavily tilted toward attorneys' fees." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). Thus, class counsel may be tempted "to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers." *Id.*

Alkon suggests that's what happened here. In support, it advances three general arguments: (1) the agreements don't benefit the class; (2) even assuming the agreements benefit the class, they provide the same benefit to the general public; and (3) even assuming the agreements provide unique benefits to the class, the primary beneficiaries of the agreements are class counsel, who stand to receive millions of dollars in attorney's fees.

In challenging the district court's conclusion that the settlement agreements benefit the class, Alkon first argues that the district court's conclusion that the settlements benefit the class members is based on clearly erroneous factual findings. Specifically, Alkon asserts the district court clearly erred in finding that "retailers [who convert to

---

this issue; even assuming that we must incorporate this factor into our analysis, we conclude that under the facts of this case, the district court didn't abuse its discretion in approving the settlement agreements.

ATC] would not raise prices to reflect increases in marginal costs because of competition." Alk. Aplt. Br. 24.

We're not convinced that the district court ever made such an unequivocal finding. To the contrary, the court explicitly recognized the possibility that retailers might pass the additional expenses associated with conversion along to their customers, and concluded not that competition would necessarily prevent retailers from raising prices altogether, but simply that competition would impact whether retailers raised their prices "and if so by how much." App. vol. 27, 7513.

Moreover, in approving the plaintiffs' settlement agreements with BP, Chevron, Citgo, ConocoPhillips, ExxonMobil, Shell, Sinclair, Sunoco, and Valero, the district court incorporated by reference its earlier analysis in approving the Costco Agreement. And there, the district court again (1) explicitly acknowledged the possibility that retailers might raise prices in response to conversion; (2) concluded it was impossible to determine with any certainty the prices that retailers might charge for gas in the future; and (3) reasoned that, *even assuming* the price of fuel might rise slightly as a result of conversion, class members would still benefit simply from "knowing that they can get accuracy and consistency of fuel measurement for their fuel dollar, regardless of fuel temperature at the time of pumping." R. vol. 11, 3146. In other words, the district court didn't necessarily find that retailers wouldn't raise fuel prices; it concluded that even assuming fuel prices might rise slightly, conversion to ATC would still benefit class members. Thus, we conclude that the district court didn't make a clearly erroneous fact finding, let alone rely on that finding to the objectors' detriment.

43

Next, in a related argument, Alkon asserts the district court "independently erred in refusing to consider" (1) the report of its expert witness, David Henderson; and (2) evidence supporting Alkon's cross-subsidization theory. Alk. Aplt. Br. 25. That theory posits that "any temperature differentials in volumetric gasoline sales simply mean[] that customers purchasing at above-average temperatures [are] cross-subsidizing customers purchasing at below-average temperatures without any additional profit to the retailers," and that while converting ATC will "end the cross-subsidization," doing so will only benefit the former at the expense of the latter, "without any net benefit to the class as a whole." *Id.* at 10-11.

But Alkon fails to provide a citation to the record demonstrating that the district court "refus[ed] to consider" either the Henderson report or Alkon's cross-subsidization theory. *Id.* at 25. To the contrary, the district court explicitly acknowledged the Henderson report in approving the Costco settlement and then explained why it found it unnecessary to resolve whether, as the Henderson report suggests, ATC conversion will increase consumer fuel costs. And in approving the remaining settlement agreements, the district court incorporated this analysis by reference. The fact that the district court ultimately found the Henderson report irrelevant doesn't establish that the district court "refus[ed] to consider" that report, as Alkon alleges. *Id*.

Similarly, while the district court didn't explicitly address Alkon's cross-subsidization theory, Alkon doesn't provide a record citation that suggests the district court "refus[ed] to consider" it. *Id.* And in any event, Costco's cross-subsidization theory simply posits that the class as a whole won't reap any economic benefit from ATC

44

conversion. Because the district court took that possibility into account and explained why it declined to find the potential lack of any economic benefit dispositive in determining whether the settlement agreements benefited the class, any error in the district court's failure to consider Alkon's cross-subsidization theory was harmless.

Next, even assuming the settlement agreements benefit the class, Alkon argues those benefits aren't unique to the class members. After all, it points out, non-members will receive the same supposed benefits from ATC conversion. And unlike class members, non-members won't have to release their claims in order to obtain those benefits. Thus, Alkon asserts, the agreements actually leave class members worse off than non-members.

We reject this argument for two reasons. First, the district court found that the plaintiffs' "overall prospects of ultimately prevailing in litigation" were slim. App. vol. 27, 7502.  In other words, class members didn't give up much by releasing their claims. So even assuming that class members are now worse off than non-class members, any difference is marginal. Second, and more importantly, Alkon cites no authority for the proposition that a district court abuses its discretion in approving a settlement agreement unless the agreement benefits class members more than it benefits non-members. Here, the class members gave up their claims—claims the district court said were unlikely to succeed—in exchange for an informational benefit. While non-class members might receive the same benefit, this isn't a zero-sum game where that fact somehow detracts from the informational benefit that class members might receive. Likewise, the fact that class members may be marginally worse off than non-class members doesn't change the

45

fact that class members will still be better off than they were before the settlement. Under these circumstances, the district court didn't abuse its discretion.

Finally, even assuming that class members will receive some marginal informational benefit from the settlement agreement, Alkon argues that class counsel remain the primary beneficiaries of the settlement agreements. And according to Alkon, that makes the settlement agreements unreasonable.

Under the Costco Agreement, Costco agreed to pay attorney's fees in whatever amount the court awarded. Under the Valero Agreement, Valero agreed to pay $4,000,000 in attorney's fees. Finally, under the remaining eight settlement agreements that Alkon has standing to challenge, the defendants agreed not to oppose attorney's fees and litigation costs of up to 30% of the settlement amounts. The following list illustrates that percentage for each of the remaining relevant settlement agreements:

| | |
|---|---|
| BP: | $ 1,500,000 |
| CITGO: | $ 270,000 |
| ConocoPhillips: | $ 1,500,000 |
| ExxonMobil: | $ 1,500,000 |
| Shell: | $ 1,500,000 |
| Sinclair: | $ 240,000 |
| Chevron: | $ 637,500 |
| Sunoco: | $ 18,300 |

In total, that means the defendants agreed not to object to attorney's fees up to $11,165,800, plus any amount the court awarded for the Costco Agreement.

Alkon argues that this amount is "grossly disproportionate" to any benefit the class members might receive from the settlement agreements. Alk. Aplt. Br. 27. But in making this argument, Alkon puts the attorney's fees on one side of the ledger and the potential

46

*economic* benefits to the class on the other—benefits that Alkon says will amount to, at most, one cent per consumer per year.

While this comparison makes for compelling imagery, it also mischaracterizes the district court's decision. The district court didn't base its approval of the settlement agreements on a finding that they might provide class members with an economic benefit. In fact, it readily acknowledged that (1) it's impossible to accurately predict ATC's potential impact on future fuel prices and (2) there exists a possibility that consumers will actually pay slightly *more* for gas under ATC. Instead, the district court found that the settlement agreements provide class members with an informational benefit: "accuracy and consistency of fuel measurement for their fuel dollar." R. vol. 27, 7500; *see also id.* at 7502. To the extent that Alkon attempts to reduce the question before us to one of simple arithmetic, its arguments are unpersuasive.

So too is its citation to *In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013). There, a divided panel of the Sixth Circuit concluded that the district court abused its discretion in approving a settlement agreement under which the class members received meaningless injunctive relief, while class counsel raked in $2.73 million—much less than defendants agreed to pay in attorney's fees here. *Id.* at 721. But class counsel in *In re Dry Max Pampers Litigation* apparently also did much less work: counsel didn't "take a single deposition, serve a single request for written discovery, or even file a response to [defendant's] motion to dismiss." *Id.* at 718. Alkon doesn't suggest that's the case here, and a mere glance at the district court's docket—which contains almost 5,000 entries spanning more than nine years—confirms otherwise.

47

More importantly, the district court's order approving the settlement agreement in *In re Dry Max Pampers Litigation* failed to address any of the objector's objections. *Id.* at 717. When a district court "is required to make a discretionary ruling that is subject to appellate review, we have to satisfy ourselves, before we can conclude that the judge did not abuse his discretion, that he exercised his discretion, that is, that he considered the factors relevant to that exercise." *New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1290 (10th Cir. 2008) (quoting *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)). While that was impossible to do in *In re Dry Max Pampers Litigation*, it's not impossible to do here; the district court provided thorough, well-reasoned responses to each objection—including, critically, Alkon's arguments that the settlement agreements (1) don't benefit class members; and (2) allow excessive attorney's fees. Because we are therefore confident that the district court in this case "considered the factors relevant" to its exercise of discretion, *Woodruff*, 512 F.3d at 1290 (quoting *Cunningham*, 429 F.3d at 679), we owe its exercise of that discretion great deference, *see Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) ("The authority to approve a settlement of a class or derivative action is committed to the sound discretion of the trial court."). We therefore decline to rely on the Sixth Circuit's opinion in *In re Dry Max Pampers Litigation*.

We likewise decline to rely on *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), which Alkon also cites. There, the Seventh Circuit held that the district court abused its discretion in approving a settlement agreement that set aside approximately $2 million for class counsel fees and attorney expenses and only $865,284 for the 30,245

48

class members, concluding that the settlement amounted to "a selfish deal between class counsel and the defendant" that "disserve[d] the class." 772 F.3d at 780-81, 787. In reaching that conclusion, the Seventh Circuit suggested that the "presumption should . . . be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Id.* at 782.

We disagree. As the Sixth Circuit has explained, "[c]onsumer class actions . . . have value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation— and as private law enforcement regimes that free public sector resources." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016), *cert. denied sub nom. Blackman v. Gascho*, No. 16-364, 2017 WL 670215 (Feb. 21, 2017), *and sub nom. Zik v. Gascho*, No. 16-383, 2017 WL 670216 (Feb. 21, 2017). "If we are to encourage these positive societal effects, class counsel must be adequately compensated—even when significant compensation to class members is out of reach (such as when contact information is unavailable, or when individual claims are very small)." *Id.* And "[a]n inflexible, categorical rule," such as the one the Seventh Circuit espoused in *Pearson*, "neglects these additional considerations." *Id.*

In short, Alkon doesn't cite a single case in which this court has disturbed a district court's order approving a settlement agreement. And our research yields only one: *Woodruff*, 512 F.3d 1283. But in *Woodruff*, as in *Pearson*, the district court failed to provide "any independent reasoning or analysis" to support its decision to approve the settlement agreement. *Id.* at 1290. That's not the case here. And while we may not agree

49

with the decision the district court ultimately reached, we cannot say that decision is an abuse of discretion.

**E.    The district court didn't abuse its discretion in certifying the class.**

Finally, Alkon asserts that because the district court found it "infeasible to distribute damages to class members if the litigation were successful," the district court erred in finding certification appropriate under Fed. R. Civ. P. 23(b)(3). Alk. Aplt. Br. 43; *see* Fed. R. Civ. P. 23(b)(3) (requiring, in relevant part, finding that class action is "superior to other available methods for fairly and efficiently adjudicating the controversy"). The district court rejected this argument, concluding that (1) the settlements "provide value and benefit to class members"; and (2) Alkon failed to establish that class members could feasibly pursue individual claims given the cost of maintaining separate actions. App. vol. 27, 7508.

"The decision to grant or deny certification of a class belongs within the discretion of the trial court. We will not interfere with that discretion unless it is abused." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1287 (10th Cir. 1999) (quoting *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)).

Here, Alkon appears to suggest that a district court necessarily abuses its discretion by certifying a class when a class action "can provide no compensatory value to class members." Alk. Aplt. Br. 43-44. But none of the cases that Alkon cites establish such a bright line rule. At best, one of them establishes that a district court *may* deny certification on similar grounds—not that a district court *must* to do. *See Quinn v. Nationwide Ins. Co.*, 281 F. App'x 771, 778 (10th Cir. 2008) (unpublished) (concluding

50

that district court didn't abuse its discretion in refusing to certify class under Rule 23(b)(3) where "class action proposed by plaintiffs would be difficult to manage and would not be more efficient than having the claims of individual class members resolved independently"). The other cases Alkon cites are distinguishable on factual and legal grounds. *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011) (acknowledging that district court erred in "departing from the text of Rule 23(b)(3)" in refusing to certify class, but nevertheless affirming district court's ultimate decision not to certify class under Rule 23(a)(4)); *In re Hotel Tel. Charges*, 500 F.2d 86, 89, 90-91 (9th Cir. 1974) (concluding that class action wasn't superior method of adjudication under Rule 23(b)(3) where any monetary benefit to class members would have been "entirely consumed by the costs of notice alone," but never addressing whether non-monetary benefits to class members might satisfy Rule 23(b)(3)).

Here, the district court found that "in light of the limited size of any potential financial recovery for any particular class member and the possibility of inconsistent results, a class action [was] a far superior method of resolving the claims compared to individual suits." App. vol. 27, 7498-99. And again, even assuming we might disagree with the district court on this point, Alkon fails to establish that the district court's decision is so unreasonable as to constitute an abuse of discretion. *See Queen v. TA Operating, LLC*, 734 F.3d 1081, 1086 (10th Cir. 2013) (explaining that district court abuses its discretion only if "it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in

51

a manifestly unreasonable judgment" (quoting *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007))).

## CONCLUSION

The settlement agreements at issue here are unusual. But the decision to approve them rests with the sound discretion of the district court. Under the unique facts of this case, we can't say the district court abused that discretion. Accordingly, we affirm the district court's approval of the 10 settlement agreements that Alkon has demonstrated standing to challenge. We likewise affirm the district court's order refusing to allow Costco to adopt the terms of the Stipulation under Section 4.7 of the Costco Agreement.